**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No. _____**

TEMPUR SEALY INTERNATIONAL,
INC., TEMPUR-PEDIC MANAGEMENT,
INC., TEMPUR-PEDIC NORTH
AMERICA, LLC, and DAN-FOAM APS,

      Plaintiffs,

vs.

BRICKELL MATTRESS, LLC;
SELECT FOAM GROUP, LLC;
SELECT FOAM, INC.;
MATTHEW BYRD, Individually;
CHRIS NELSON, Individually; and
JUAN QUINTERO, Individually.

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Tempur Sealy International, Inc., Tempur-Pedic Management, Inc., Tempur-Pedic North America, LLC, and Dan Foam ApS (collectively "Tempur Sealy"), by counsel, bring this Complaint against Defendants Brickell Mattress, LLC, Select Foam Group, LLC, Select Foam, Inc., Matt Byrd, in his individual capacity, Chris Nelson, in his individual capacity, and Juan Quintero, in his individual capacity (collectively "Defendants"), and respectfully state as follows:

## JURISDICTION AND VENUE

1.     This is an action for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition in violation of Section 43 of the Lanham Act,

15 U.S.C. § 1125(a); false advertising in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c); trademark dilution in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c); cybersquatting in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(d); trademark infringement and unfair competition in violation of the common law of the State of Florida; and copyright infringement in violation of the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq*.

2.      This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338. This Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.      This Court has personal jurisdiction over the Defendants pursuant to Fla. Stat. § 48.193 in that the Defendants are doing business in the Southern District of Florida, and in that the individual defendant is a resident in the Southern District of Florida.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, as set forth more fully below, a substantial part of the events or omissions giving rise to Tempur Sealy's claims in this matter occurred in the Southern District of Florida.

**THE PARTIES**

5.      Plaintiff Tempur Sealy International is a Delaware corporation having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

6.      Plaintiff Tempur-Pedic Management, Inc. is a Delaware corporation having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

7.      Plaintiff Tempur-Pedic North America, LLC is a Delaware limited liability company having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

8.      Plaintiff Dan-Foam ApS is a Danish corporation having its principal place of business at Holmelund 43, Aarup DK-5560, Denmark. Dan-Foam ApS is a wholly owned subsidiary of Tempur-Pedic Management, Inc.

9.      Defendant Brickell Mattress, LLC is a Florida limited liability company having its principal place of business at 1030 SW 8th Street, Miami, Florida 33130, and with a mailing address of 1637 SW 8th Street, Suite 200, Miami, Florida 33135.   According to Florida Secretary of State records, Defendant Select Foam Group, LLC is listed as a manager of Brickell Mattress, LLC, including in the April 30, 2016 Annual Report filed for Brickell Mattress, LLC.

10.     Defendant Select Foam Group, LLC is a Florida limited liability company having its principal place of business at 1060 Brickell Avenue, Unit 3605, Miami, Florida 33131.  On information and belief, Defendants Chris Nelson and Matt Byrd are both managers of Select Foam Group, LLC.  According to Florida Secretary of State records, Select Foam Group, LLC was administratively dissolved in 2012.

11.     Defendant Select Foam, Inc. is a Florida corporation having its principal place of business at Principal Address 1030 SW 8th Street, Miami, Florida 33130.  On information and belief, Matt Byrd, Chris Nelson, and Juan Quintero are officers of Select Foam, Inc.

12.     On information and belief, the Defendants also operate under the alternate business names of Las Vegas Luxury Beds, MattressGuides.com, and SleepLux.com, and Select Luxury Sleep.  Defendants Chris Nelson and Matt Byrd are also listed as officers of the administratively dissolved entity Select Luxury Beds, Inc., a Florida corporation, having a principal address of 201 Crandon Blvd, 636, Key Biscayne, Florida 33149.

13.     On information and belief, Defendant Matt Byrd ("Byrd") is an individual and resident of Florida, having a residence at 201 Crandon Blvd., Unit 308, Key Biscayne, Florida 33140 and having a business address of 1030 SW 8th Street, Miami, Florida 33130.

14.     On information and belief, Defendant Chris Nelson ("Nelson") is an individual and resident of California, having a residence at 423 Hill Street, #1, Santa Monica, California 90405 and having a business address of 1030 SW 8th Street, Miami, Florida 33130.

15.     On information and belief, Defendant Juan Quintero ("Quintero") is an individual and resident of Florida, having a residence at 5931 Cornwall Lane, Davie, Florida 33331 and having a business address of 1030 SW 8th Street, Miami, Florida 33130.

16.     On information and belief, Byrd is a member, manager, and/or director or officer of Brickell Mattress, LLC, Select Foam Group, LLC, and Select Foam, Inc., as well as Las Vegas Luxury Beds and MattressGuides.com, and as such owns, operates, supervises, and/or controls the day-to-day operations of these entities, including the unlawful activities engaged in by these Defendants, and has a direct financial interest in such unlawful activities. On information and belief, Byrd has knowledge of, directed, controlled, supervised, acted in concert with, and/or took action that contributed to the unlawful activities engaged in by these business entities.

17.     On information and belief, Nelson is a member, manager, and/or director or officer of Brickell Mattress, LLC, Select Foam Group, LLC, and Select Foam, Inc., as well as Las Vegas Luxury Beds and MattressGuides.com, and as such owns, operates, supervises, and/or controls the day-to-day operations of these entities, including the unlawful activities engaged in by these Defendants, and has a direct financial interest in such unlawful activities. On information and belief, Nelson has knowledge of, directed, controlled, supervised, acted in

concert with, and/or took action that contributed to the unlawful activities engaged in by these business entities.

18.    On information and belief, Quintero is a member, manager, and/or director or officer of Brickell Mattress, LLC, Select Foam, Inc., as well as Las Vegas Luxury Beds and MattressGuides.com, and as such owns, operates, supervises, and/or controls the day-to-day operations of these entities, including the unlawful activities engaged in by these Defendants, and has a direct financial interest in such unlawful activities. On information and belief, Quintero has knowledge of, directed, controlled, supervised, acted in concert with, and/or took action that contributed to the unlawful activities engaged in by these business entities.

19.    Additionally, on information and belief, Byrd, Nelson, and Quintero operate Brickell Mattress, LLC, Select Foam Group, LLC, Select Foam, Inc., Las Vegas Luxury Beds, and MattressGuides.com as their alter egos and/or as a single integrated enterprise in order to perpetrate these wrongful and unlawful activities.

20.    Defendants engage in the business of selling mattresses and other ancillary products over the Internet throughout the United States, including in the Southern District of Florida. Additionally, Defendants own and operate at least one retail location physically located in this District, along with at least one other bricks and mortar location in Las Vegas, Nevada.

## STATEMENT OF RELEVANT FACTS

**I.    TEMPUR SEALY IS KNOWN WORLDWIDE AS A SOURCE OF HIGH-QUALITY BEDDING PRODUCTS.**

21.    Tempur Sealy is involved in the research, development, manufacture, supply, and sale of premium mattresses, pillows, and other comfort products.

22.     Tempur Sealy's TEMPUR-PEDIC brand products are made from TEMPUR Material, a type of viscoelastic, temperature sensitive, and pressure relieving foam that is proprietary to Tempur Sealy and a valuable, highly confidential trade secret.

23.     Dan-Foam ApS owns the trademarks TEMPUR, TEMPUR-PEDIC, TEMPUR-PEDIC & Reclining Figure Design, TEMPUR- CLOUD, TEMPUR-HD, TEMPUR-ES, THE ADVANTAGEBED BY TEMPUR-PEDIC, THE ALLURABED BY TEMPUR-PEDIC, THE BELLAFINA BED BY TEMPUR-PEDIC, THE CELEBRITYBED BY TEMPUR-PEDIC, THE CLASSICBED BY TEMPUR-PEDIC, and THE GRANDBED BY TEMPUR-PEDIC, and many others, and has registered such marks in the United States Patent and Trademark Office ("USPTO") as follows:

| Mark | Reg. No. | Reg. Date | Goods |
|------|----------|-----------|-------|
| TEMPUR | 1,926,469 | Oct. 10, 1995 | Mattresses, Cushions and Furniture Pads Made of Viscous Foam |
| TEMPUR-PEDIC | 1,853,088 | Sept. 6, 1994 | Mattresses, Cushions and Furniture Pads Made of Viscous Foam |
| TEMPUR-CLOUD | 3,945,266 | April 12, 2011 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters, and Chair Pads |
| TEMPUR-HD | 3,451,045 | June 17, 2008 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads. |

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| TEMPUR-ES | 3,955,437 | May 3, 2011 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads. |
| THE ADVANTAGEBED BY TEMPUR-PEDIC | 3,700,051 | Oct. 20, 2009 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads |
| THE ALLURABED BY TEMPUR-PEDIC | 3,509,218 | Sept. 30, 2008 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads |
| THE BELLAFINA BED BY TEMPUR-PEDIC | 3,700,052 | Oct. 20, 2009 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads |
| THE CELEBRITYBED BY TEMPUR-PEDIC | 3,456,803 | July 1, 2008 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads |
| THE CLASSICBED BY | 3,446,640 | Jun. 10, 2008 | Mattresses |

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| THE GRANDBED BY TEMPUR-PEDIC | 3,567,704 | Jan. 27, 2009 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters and Chair Pads |
| TEMPUR-PEDIC and Design  | 3,900,919 | Jan. 4, 2011 | Seating and Couching Mats in the Nature of a Pillow or Seat Liner, Pillows, Cushions, Mattresses, Top Mattresses, Bolsters, and Chair Pads |
| THE DELUXEBED BY TEMPUR-PEDIC | 3,921,145 | Feb. 15, 2011 | Mattresses |

24.     In addition, Tempur-Pedic Management, LLC is the record owner of a federal trademark registration for THE RHAPSODY BED BY TEMPUR-PEDIC, U.S. Registration No. 3,319,861.

25.     Dan-Foam ApS also owns registrations for TEMPUR and/or TEMPUR-PEDIC in approximately 180 countries throughout the world.

26.     Each registration is currently valid, subsisting and in full force and effect, and is registered on the Principal Trademark Register of the USPTO.  U.S. Registration Nos. 1,926,469 for TEMPUR and 1,853,088 for TEMPUR-PEDIC have attained incontestable status pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.  True and accurate records from the USPTO's TDR database reflecting the Certificates of Registration referenced above are attached as **Exhibit A**.

27.     In approximately 1992, Fagerdala World Foams AB, the predecessor in interest to Plaintiff Tempur-Pedic Management, Inc., designed a unique and creative original work referred

to as the Reclining Figure Design.  In 2007, at Plaintiff's direction, the Reclining Figure Design was updated.  Any rights arising in the artwork associated with the updated Reclining Figure Design were transferred to Plaintiffs by subsequent written assignment.  The updated Reclining Figure Design continues the same commercial impression as the original Reclining Figure Design.

28.     The updated Reclining Figure Design was duly and properly registered with the United States Copyright Office on April 21, 2010 as VA 1-729-142 (the "Copyrighted Reclining Figure Design").  The Certificate of Registration for the Reclining Figure Design was secured prior to the infringing conduct alleged herein.  A true and correct copy of the Certificate of Copyright Registration for VA 1-729-142 is attached as **Exhibit B**.  The updated Reclining Figure Design is also shown below.



29.     Additionally, under the Lanham Act and Florida common law, Tempur-Pedic owns unregistered common law trademarks for TEMPUR-CLOUD LUXE, TEMPUR-CLOUD SUPREME, TEMPUR-CONTOUR, TEMPUR-CONTOUR SIGNATURE, TEMPUR-CONTOUR SELECT, THE ERGO ADJUSTABLE BASE, and THE ADVANCED ERGO ADJUSTABLE BASE.  Hereinafter, all of the foregoing names and other marks owned, used, or registered by Tempur Sealy shall be referred to individually and collectively as the "TEMPUR-PEDIC Marks."

30.     The TEMPUR-PEDIC Marks and variants thereof have been extensively and continually used, advertised, and promoted by Tempur Sealy within the United States and

worldwide for the past nineteen years. Substantial time, effort, and money have been expended over the years in ensuring that the purchasing public associates such marks exclusively with Tempur Sealy. In the last two years alone, Tempur Sealy expended over $476 million in connection with its advertisement and promotion of products bearing the TEMPUR-PEDIC Marks to establish these marks in the minds of customers as a source of high-quality bedding products.

31.     As a result of Tempur Sealy's dedication to quality and its aggressive marketing, the goodwill associated with the TEMPUR-PEDIC Marks has translated into over one billion dollars in sales annually.

32.     Because of Tempur Sealy's extensive advertisement and promotion of products bearing the TEMPUR-PEDIC Marks and its billions of dollars of sales of TEMPUR-PEDIC brand products, the TEMPUR-PEDIC Marks have become famous among the relevant consuming public.

33.     Tempur    Sealy    maintains    a    commercial    website    at    the    URL www.tempurpedic.com. Tempur Sealy uses the TEMPUR-PEDIC Marks to advertise and sell TEMPUR-PEDIC brand products to consumers directly through its www.tempurpedic.com website.

34.     Tempur Sealy uses the TEMPUR-PEDIC Marks elsewhere on the Internet to promote TEMPUR-PEDIC brand products to consumers, which advertising directs consumers to the www.tempurpedic.com website where consumers may purchase TEMPUR-PEDIC brand Products.

35.     Tempur Sealy prohibits most of its authorized retailers from selling TEMPUR-PEDIC brand products over the Internet in order to protect the integrity of the TEMPUR-PEDIC

Marks.  If an authorized retailer wishes to sell TEMPUR-PEDIC brand products over the Internet, it must obtain advanced approval from Tempur Sealy. Such approval is subject to additional conditions and obligations.

**II.     TO PROTECT AND ENSURE THE QUALITY OF ALL TEMPUR-PEDIC BRAND PRODUCTS, AUTHORIZED RETAIL DEALERS ARE THE ONLY ENTITIES ALLOWED TO PROMOTE AND SELL AUTHORIZED TEMPUR-PEDIC BRAND PRODUCTS**

36.     Tempur Sealy currently sells a variety of mattress models, all of which are associated with various TEMPUR-PEDIC Marks, and which are comprised of variously layered TEMPUR Material.  Tempur Sealy also sells foundations for its mattresses, as well as other products made from TEMPUR Material.

37.     To guarantee and maintain the high quality of goods bearing the TEMPUR-PEDIC Marks, Tempur Sealy maintains an authorized network of retail dealers for its TEMPUR-PEDIC brand Products.  This network includes Tempur Sealy itself, physicians and other health care professionals, local bedding retailers, and select national retailers, all of which have been evaluated, trained, and authorized by Tempur Sealy to sell authorized TEMPUR-PEDIC brand Products ("Authorized Retailers").

38.     Authorized TEMPUR-PEDIC brand Products are sold only through these authorized channels to ensure that Tempur Sealy's legitimate, substantial, and non-pretextual quality control procedures are followed.  Tempur Sealy provides a twenty-year limited warranty to customers who purchase authorized TEMPUR-PEDIC brand mattresses sold by Authorized Retailers.

39.     TEMPUR Material is sensitive to heat and cold and can be permanently damaged if not handled properly.  Tempur Sealy takes reasonable steps to communicate the nature of its

TEMPUR Material to its Authorized Retailers so that they may comply with the quality control measures necessary to protect and maintain the TEMPUR Material.

40.     Tempur Sealy also promotes the proper sale, promotion, storage, delivery, handling, care, and maintenance of TEMPUR-PEDIC brand Products to its Authorized Retailers, and encourages its Authorized Retailers to educate customers on these topics.

41.     Tempur Sealy's Territory Sales Managers visit Authorized Retailers' stores after initial training to ensure that Authorized Retailers in each sales territory incorporate the Tempur Sealy training and are actually handling the products properly and providing accurate information to customers.

42.     Authorized Retailers agree to comply with the obligations and advertising policies set forth in a retailer agreement.  These retailer agreements, among other things, restrict the authorized retailer's ability to sell TEMPUR-PEDIC brand Products.  Authorized Retailers may sell products to ultimate consumers only.  Tempur Sealy expressly prohibits the sale of TEMPUR-PEDIC brand Products to any party other than a retail customer.

43.     Tempur Sealy controls the geographic scope of its authorized retailers as well. With the exception of a few select and approved national retailers, authorized retailers may not routinely sell or ship TEMPUR-PEDIC brand Products outside of their physical store's immediate geographic area, not may they advertise the ability to ship TEMPUR-PEDIC brand Products nationwide.

44.     Tempur Sealy also prohibits authorized retailers from selling TEMPUR-PEDIC brand Products over the Internet.  If an Authorized Retailer wishes to sell TEMPUR-PEDIC brand Products over the Internet, it must obtain advanced approval from Tempur Sealy.  Such approval is subject to additional conditions and obligations.

45.     Tempur Sealy provides every authorized retailer with access to the Tempur-Pedic Asset Manager Website.  The website reminds the authorized retailers of the obligations and advertising policies set forth in the retailer agreement.

46.     Because of these and other quality control measures, customers enjoy unique, comprehensive warranty protection for all authorized TEMPUR-PEDIC brand Products sold directly by Tempur Sealy or through an Authorized Retailer.

47.     Tempur Sealy specifically warrants all authorized TEMPUR-PEDIC brand Mattresses.  The Warranty is void if inappropriate manufactures' foundations or box springs are substituted for the firm, completely flat, non-spring foundation that TEMPUR-PEDIC brand Mattresses require or if the mattress, foundation, or cover has been physically abused, damaged, burned, cut, or torn.

48.     Few other mattress and home products manufactures provide equivalent warranty protection for their products.  By providing robust warranty provisions, Tempur Sealy is communicating to customers that its product is of extremely high quality.  Tempur Sealy's reputation and history as a company that fulfills its warranty obligations enhances the TEMPUR-PEDIC brand.

49.     Because TEMPUR Material can be permanently damaged if not handled correctly, Tempur Sealy does not warrant TEMPUR-PEDIC brand Products sold outside the authorized network ("Non-Authorized Products"), where chain of control and proper handling procedures cannot be verified by Tempur Sealy.

III.   **DEFENDANTS HAVE REPEATEDLY USED TEMPUR SEALY INTELLECTUAL PROPERTY TO UNLAWFULLY PROMOTE, OFFER FOR SALE, AND SELL COMPETING PRODUCTS ON THE INTERNET.**

50.     Defendants have a long history of chronically and unlawfully using the TEMPUR-PEDIC Marks in a bold and improper fashion to cause both initial consumer confusion and actual consumer confusion in order to drive consumers to their websites where they sell products that compete with Tempur Sealy, using Defendants' confusingly similar product names.

51.     Defendants' repeated violations are evidence of willfulness.  Beginning as early as 2011, without Tempur Sealy's consent, Defendants began using the TEMPUR-PEDIC Marks on its website in violation of Tempur Sealy's trademark rights under the Lanham Act and Florida common law.  On information and belief, Defendants began using the TEMPUR-PEDIC Marks in such a manner in order to drive Internet traffic to their websites by manipulating search engines, causing initial consumer confusion and/or actual consumer confusion.

52.     Defendant Matt Byrd was at one time an authorized retailer of TEMPUR-PEDIC brand products and as such was bound by the terms of an Authorized Retailer Agreement.

53.     As a condition of acting as an authorized retailer for Plaintiffs, Byrd was prohibited from registering or using any domain name that incorporates the TEMPUR-PEDIC Marks.  Despite this legal prohibition, Matt Byrd registered and was using the domain name www.tempurpedicmattress.org in connection with his business Select Foam.  For a period of time, Select Foam offered for sale TEMPUR-PEDIC brand products as well as competing bedding products that did not emanate with Plaintiffs.  Byrd and Brickell also failed to comply with Plaintiff's acceptable marketing practices and guidelines in using the unauthorized URL to sell products.  An example of a web pages displayed in connection with the unauthorized use of

14

www.tempurpedicmattress.org, which redirect to www.mattressguides.com is attached as **Exhibit C.**

54.     In September 2011, Plaintiffs contacted Defendant Byrd placing him on notice that he was in violation of is Authorized Retailer Agreement and demanding that he cease use of the domain name www.tempurpedicmattress.org.

55.     On September 13, 2011, Defendant Byrd left a message for counsel for Plaintiffs stating that he wanted to keep the domain name because it "has good traffic" and "redirects" to his "brick and mortar" store in Miami, Florida.  *See* email from Joyce Early to Ariana Voigt dated September 13, 2011 attached as **Exhibit D**.

56.      Plaintiffs terminated the retail account of Brickell Furniture in December 2011. Defendant Byrd did not agree to transfer the domain name www.tempurpedic.org to Plaintiffs in connection with the termination.  *See* **Exhibit D**.

57.     Although Defendant Byrd temporarily took down the commercial website associated with the www.tempurpedic.org domain name, he later resumed use of the domain name with actual knowledge of Plaintiffs' objections and in knowing violation of the law.  *See* **Exhibit C**.

58.     Also in 2011, Tempur Sealy's counsel directed correspondence to Domains by Proxy to request the identity of the registrant of the www.SelectFoam.com commercial website, which was making unauthorized use of the TEMPUR-PEDIC Marks in a manner suggested to consumers that Defendants were acting as Authorized Retailers. Domains by Proxy identified the registrant of the domain name as Defendant Nelson.

59.     As a result, in December 2011, Tempur Sealy's counsel directed a letter to Defendant Nelson objecting to Defendants' commercial activities associated with the

15

www.SelectFoam.com commercial website.  Tempur Sealy's counsel also provided Defendants with numerous examples of false and misleading statements on its website.  Upon information and belief, Defendants Nelson and Byrd were acting and continue to act in concert with regard to unlawful commercial conduct in connection with the www.SelectFoam.com website.  *See* representative screenshot dated May 19, 2016 attached as **Exhibit E.**

60.    In 2012, Tempur Sealy's counsel again directed correspondence to Defendant Byrd objecting to Defendants' commercial activities associated with the BrickellMattress.com commercial website, which was making unauthorized use of the TEMPUR-PEDIC Marks that suggested to consumers that Defendants' were acting as Authorized Retailers.  Tempur Sealy's counsel also objected to Defendants' unauthorized use of Tempur Sealy's Copyrighted Reclining Figure Design.  Upon information and belief, Defendants Nelson, Byrd, and Quintero were acting and continue to act in concert with regard to unlawful commercial conduct in connection with the www.brickellmattress.com website.  *See* representative screenshot dated June 9, 2016 attached as **Exhibit F.**

61.    On May 3, 2012, Plaintiffs again became aware of the Defendants' unauthorized use of the www.tempurpedic.org URL to sell non-authorized product.  Plaintiffs notified the hosting company for Defendant's website, HostMonster.com, of the legal violations through a proper takedown notice dated May 3, 2012.  *See* email from Amy Cahill to legal@hostmonster.com dated May 3, 2012 attached as **Exhibit G.**  Once again, Defendants' response to this remedial action proved only temporary.

62.    In March 2014, Tempur Sealy counsel again contacted Defendants in association with the www.BrickellMattress.com website, which was again making unauthorized use of the TEMPUR-PEDIC Marks and Copyrighted Reclining Figure Design, as well as engaging in false

and misleading advertising regarding the TEMPUR-PEDIC brand Products.  *See* representative screenshots attached as **Exhibit H.**

63.    In April 2016, counsel for Tempur Sealy sent Digital Millennium Copyright Act take-down notices to two different hosting companies being utilized by Defendants, advising of Defendants' misuse of the Copyrighted Reclining Figure Design on www.mattressguides.com and www.brickellmattress.com, along with violations of the hosting companies' Acceptable Use Policies pertaining to misuse of the intellectual property of others.   According to publicly-available whois data, the domain name www.tempurpedicmattress.org is owned by Defendants, and currently redirecting to www.mattressguides.com.  *See* redirect checker and Whois data attached as **Exhibit I.**  Defendants used these domains to advertise and sell unauthorized and/or non-genuine product, although it is unclear what if any product is being sold through the web site.

64.    On or about April 27, 2016, the hosting company for www.mattressguides.com and the associated www.tempurpedicmattress.org domain complied with a request to take-down the websites hosted at these domains.  On May 17, 2016, Tempur Sealy received notice from the hosting company stating that Defendants had filed a counter-notification requesting reinstatement of the websites, and on or about May 27, 2016, the website available and these domains were restored.  *See* **Exhibit I.**

65.    Upon information and belief, Defendants own additional domain names, including but not limited to www.tempurpedicmattress.org, www.tempurpedicrhapsodybed.com, www.brickellmattress.com, www.mattressguides.com, www.selectfoam.com (.net, .org, and .info);    www.lasvegasluxurybeds.com,    www.lasvegasluxurymattres.com,    and

17

www.luxurybedreviews.com.   Defendants use certain of these domains to operate multiple commercial websites that sell mattresses, adjustable bases, and other ancillary products.

66.     Additionally, upon information and belief, Defendants registered the domain names www.tempurpedicmattress.org and www.tempurpedicrhapsodybed.com, in 2009 and 2010 respectively, in bad faith in order to cause initial consumer confusion and/or actual consumer confusion regarding the source, sponsorship, approval and/or authorization of Defendants' goods, services, and business operations.    Defendants use the www.tempurpedicmattress.org domain name to redirect to Defendants' website at www.mattressguides.com, where Defendants engage in false and misleading advertising and make unauthorized use of the TEMPUR-PEDIC Marks and Copyrighted Reclining Figure Design as shown in **Exhibit H.**

67.     Additionally, Defendants' website at www.brickellmattress.com displays various models of mattresses purported to be TEMPUR-PEDIC brand mattresses and makes unauthorized use of the TEMPUR-PEDIC Marks, and until notice to the hosting company was provided, was also making unauthorized use of Tempur Sealy's Copyrighted Reclining Figure Design.    The website persists in displaying supposed TEMPUR-PEDIC brand Mattresses accompanied with a "Request a Quote" button, which appears to charge consumers $1.00 to receive a quote for a style and size of Tempur Sealy.   Defendants' actions are misleading to consumers, in that it appears that Defendants are acting as an Authorized Retailer for Tempur Sealy.   Moreover, upon information and belief, Defendants use this "Request a Quote" mechanism to get a consumers' information for the purpose of enticing consumers to buy a different brand of mattress from Defendants.  *See* **Exhibit H.**

68.     Since at least as early as 2011, Tempur Sealy has provided Defendants with written notice of its intellectual property rights, Defendants' infringement of the TEMPUR-PEDIC Marks, Defendants' infringement of the Copyrighted Reclining Figure Design, and the unfair practices which had come to Tempur Sealy's attention.  Written notice has been provided to Defendants numerous times in the years from 2011 to 2016, without response or to only temporary avail.

69.     Although Defendants have removed certain uses of the Copyrighted Reclining Figure Design after receiving notices through their hosting companies, and after one of the hosting companies taking action to entirely disable the www.mattressguides.com website (to which www.tempurpedicmattress.org redirects), Defendants continue to use the TEMPUR-PEDIC Marks and Copyrighted Reclining Figure Design in violation of Tempur Sealy's rights, and state and federal law.  Moreover, Defendants filed a counter notice with the hosting company, which has now restored the www.mattressguides.com site, and the www.tempurpedicmattress.org redirection to that website.

70.     Despite repeated communications with Defendants, Defendants continue to use the TEMPUR-PEDIC Marks without Tempur Sealy's authorization to sell competing products in their retail and online stores.

71.     Long after Tempur Sealy adopted and established its strong and valuable trademark rights, Defendants prominently, repeatedly, and without permission or authorization of Tempur Sealy and with complete knowledge and notice of Tempur Sealy's intellectual property rights, continued using the TEMPUR-PEDIC Marks, including Tempur Sealy's world-famous name and trademarks, TEMPUR-PEDIC and the TEMPUR-PEDIC Reclining Figure Design, in a manner that was and is likely to confuse customers as to: (i) the nature of the

relationship between Defendants and Tempur Sealy; and (ii) Tempur Sealy's approval of Defendants' business operations conducted in association with the TEMPUR-PEDIC Marks.  In spite of repeated actual notice from Tempur Sealy that it strenuously objected to Defendants' unauthorized use and misuse of the TEMPUR-PEDIC Marks, Defendants continue to attract customers for the purpose of selling competing products in a manner that falsely suggests and implies to consumers that Defendants are acting as an Authorized Retailer.

72.     On information and belief, Defendants' unauthorized, prominent, and repeated use of the TEMPUR-PEDIC Marks, including in a domain name, advertisements, and on their websites have confused and are likely to confuse customers into believing that Defendants' businesses, goods, and services are operated or sold by Tempur Sealy or with Tempur Sealy's approval.  Additionally, Defendants' chronic, excessive, and pervasive use of the TEMPUR-PEDIC Marks on their websites far exceeds even the types of fair use permitted by law.

73.     Because of: (i) Tempur Sealy's long, extensive, and exclusive use and sale of its mattresses and other comfort products under the world-famous name and mark TEMPUR-PEDIC and famous Reclining Figure Copyright Design; (ii) Tempur Sealy's numerous contact with Defendants; and (iii) actual notice that Defendants' conduct violated Tempur Sealy's copyright and trademark rights, Defendants were, at all times, fully aware of Tempur Sealy's trademark rights. Notwithstanding this notice, Defendants continue to use the TEMPUR-PEDIC Marks and Copyrighted Reclining Figure Design in violation of Tempur Sealy's rights wantonly, willfully, and in bad faith.

74.     Defendants used and continue to use the TEMPUR-PEDIC Marks in bad faith with actual knowledge of: (1) the reputation of and goodwill in Tempur-Pedic's Marks; (2) Tempur Sealy's ownership of the TEMPUR-PEDIC Marks and the Copyrighted Reclining

Figure Design; (3) the fact that its use of the TEMPUR-PEDIC Marks and Copyrighted Reclining Figure Design to sell competing products violates Tempur Sealy's legal rights; and (4) the fact that has registered domain names containing the TEMPUR-PEDIC Marks, and is using at least one of those domains to redirect internet traffic to a website in order to sell competing products.

## IV.    DEFENDANTS' WRONGFUL CONDUCT IS WILLFUL.

75.    Defendants were aware of Tempur Sealy's intellectual property rights at least as early as 2011, when Tempur Sealy sent notices to Defendants setting forth facts similar to those set forth herein.

76.    After discovering certain of Defendants' egregious activities, Tempur Sealy provided Defendants with written notice of its intellectual property rights, their infringement of Tempur Sealy's trademarks, and the unfair practices which had come to Tempur Sealy's attention. Written notice was provided to Defendants on multiple occasions, including in 2011, 2012, 2014 and 2016.

77.    Despite their representations to the contrary, Defendants never ceased, and in fact continued and/or renewed or refused to stop their unlawful activity in the face of Tempur Sealy's objections.

78.    Defendants' continued wrongdoing is wanton, willful, in bad faith, with complete knowledge and notice, and in utter disregard for Tempur Sealy's intellectual property rights, all for Defendants' financial gain.

79.    Defendants' long history of repeated willful conduct renders this an exceptional case and entitles Plaintiffs to an award of treble damages and attorney's fees.

## V.   DEFENDANTS' UNLICENSED USE OF THE TEMPUR-PEDIC MARKS DAMAGES TEMPUR SEALY.

80.     As a result of Defendants' actions, the relevant public will be confused, mistaken, and deceived into wrongfully attributing source, sponsorship, approval and/or authorization of Defendants' goods, services, and business operations by Tempur Sealy.

81.     On information and belief, Defendants are aware that their actions are likely to cause consumer confusion, including, but not limited to, initial consumer confusion.

82.     As a result of Defendants' unlawful conduct, false representations, unfair practices, and other tortious conduct, Tempur Sealy has suffered substantial damages. Additionally, Defendants' actions as described above have and will continue to irreparably injure Tempur Sealy's goodwill, business reputation, and valuable intellectual property, including its trademarks.

## CAUSES OF ACTION

### COUNT ONE
**(Federal Trademark Infringement in Violation of Section 32 of the Lanham Act)**

83.     Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

84.     Defendants' unauthorized use, advertising, marketing, and sale of products using the TEMPUR-PEDIC Marks, as alleged herein, is likely to deceive, mislead, and confuse the relevant public.  Defendants' actions constitute trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

85.     Defendants were at all times, fully aware of Tempur Sealy's trademark rights. Tempur Sealy provided Defendants with actual notice of its intellectual property rights and their infringement of Tempur Sealy's trademarks. Defendants continued and/or renewed use and

refusal to stop using the TEMPUR-PEDIC Marks in violation of Tempur Sealy's rights is wanton and willful. On information and belief, Defendants used and continue to use the TEMPUR-PEDIC Marks in bad faith with actual knowledge of: (1) the reputation and goodwill associated with the Tempur Sealy Marks; and (2) Tempur Sealy's ownership of the TEMPUR-PEDIC Marks.

86.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

87.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business interests. Tempur Sealy has no adequate remedy at law for such infringement of Tempur Sealy's registered marks. Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

88.    As a result of Defendants' conduct, Tempur Sealy is entitled to damages, including an accounting of any profits by Defendants, statutory damages, costs, interest, attorney's fees pursuant to 15 U.S.C. § 1114, and any further relief, including without limitation, injunctive relief, which this Court may deem just and proper.

**COUNT TWO**
**(Unfair Competition in Violation of Section 43 of the Lanham Act)**

89.    Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

90.    The TEMPUR-PEDIC Marks and variants thereof, as used in connection with the premium mattresses, pillows, adjustable bases, and other comfort products are distinctive marks that have become exclusively associated with Tempur Sealy through its continuous, extensive,

and widespread use of such marks in advertising, promoting, and marketing its products and services.  As a result, the TEMPUR-PEDIC Marks exclusively identify Tempur Sealy's business, products, and services.

91.     By reason of Defendants' wrongful use of the Tempur Sealy name and Marks and false or misleading descriptions of fact in connection with the sale of competing products, customers and prospective customer of Defendants' products are deceptively led to believe that products are affiliated, connected, associated, sponsored, or otherwise approved by Tempur Sealy, when in fact Defendants have no connection or affiliation whatsoever with Tempur Sealy in regard to such products.

92.     Defendants' unauthorized use in commerce of the TEMPUR-PEDIC Marks and false or misleading representations of fact concerning the products constitute unfair competition/passing off, false designation of origin, and/or false or misleading descriptions or representations of fact, which is likely to cause confusion, including, but not limited to, initial confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of Defendants with Tempur Sealy in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93.     Defendants were at all times fully aware of the high demand for TEMPUR-PEDIC brand products and Tempur Sealy's trademark rights.  Tempur Sealy provided Defendants with actual notice of its intellectual property rights at least as early as 2011. Defendants' continued violations and refusal to stop using the TEMPUR-PEDIC Marks after receiving such notice is wanton and willful. On information and belief, Defendants used and continue to use the TEMPUR-PEDIC Marks in bad faith with actual knowledge of: (1) the

reputation and goodwill associated with the TEMPUR-PEDIC Marks; and (2) Tempur Sealy's ownership of the TEMPUR-PEDIC Marks.

94.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

95.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill and reputation. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

96.     As a result of Defendants' conduct, Tempur Sealy is entitled to damages, including an accounting of any profits by Defendants, statutory damages, costs, interest, attorney's fees pursuant to 15 U.S.C. § 1114, and any further relief, including without limitation, injunctive relief, which this Court may deem just and proper.

## COUNT THREE
### (False Advertising in Violation of Section 43 of the Lanham Act)

97.     Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

98.     Defendants' use of false or misleading descriptions and representations of fact concerning the products sold under the TEMPUR-PEDIC Marks, including false or misleading actions and statements regarding Defendants' status as an Authorized Retailer and regarding the quality, performance, and attributes of Tempur Sealy's products, misrepresents the nature, characteristics, and qualities of Defendants' goods, services, and commercial activities, materially affect customers' purchasing decisions in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

99.     Defendants were fully aware that their statements were false or misleading. Tempur Sealy provided Defendants with actual notice of its intellectual property rights on multiple occasions.  Defendants' continued use of the TEMPUR-PEDIC Marks in violation of Tempur Sealy's rights is wanton and willful.

100.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

101.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business model. Tempur Sealy has no adequate remedy at law for this damage.  Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

102.     As a result of Defendants' conduct, Tempur Sealy is entitled to damages, including an accounting of any profits by Defendants, statutory damages, costs, interest, attorney's fees pursuant to 15 U.S.C. § 1114, and any further relief, including without limitation, injunctive relief, which this Court may deem just and proper.

### COUNT FOUR
### (Trademark Dilution in Violation of Section 43 of the Lanham Act)

103.     Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

104.     The TEMPUR-PEDIC Marks are arbitrary, fanciful, and/or highly distinctive, as used in connection with premium mattresses and other comfort products and are strong and famous marks as a result of Tempur Sealy's prominence in the marketplace and extensive advertising of its goods and services under those marks.

105.    Defendants' unauthorized use in commerce of the TEMPUR-PEDIC Marks is likely to tarnish, dilute, and disparage Tempur Sealy's reputation, goodwill, and the TEMPUR-PEDIC Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

106.    Defendants' unauthorized use of the TEMPUR-PEDIC Marks commenced long after the marks became famous.

107.    Defendants were or should have been, at all times, fully aware of Tempur Sealy's trademark rights. Tempur Sealy provided Defendants with actual notice of its intellectual property rights numerous times since at least as early as 2011. Defendants' continued use of the TEMPUR-PEDIC Marks in violation of Tempur Sealy's rights is wanton and willful. On information and belief, Defendants used and continue to use the TEMPUR-PEDIC Marks in bad faith with actual knowledge of: (1) the reputation and goodwill associated with these marks; and (2) Tempur Sealy's ownership of them. Such use violates Tempur Sealy's ability to control the quality of its products and services.

108.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

109.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill and reputation. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

110.    As a result of Defendants' conduct, Tempur Sealy is entitled to damages, including an accounting of any profits by Defendants, statutory damages, costs, interest,

attorney's fees pursuant to 15 U.S.C. § 1114, and any further relief, including without limitation, injunctive relief, which this Court may deem just and proper.

## COUNT FIVE
### (Trademark Infringement and Unfair Competition in Violation of Florida Common Law)

111.    Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

112.    Tempur Sealy has continually advertised, promoted, offered for sale, and sold TEMPUR-PEDIC brand Products in the State of Florida under the TEMPUR-PEDIC Marks.

113.    Defendants' unauthorized use, advertising, marketing, and sale of products using the TEMPUR-PEDIC Marks are in violation of the common law of the State of Florida, in that such use of the TEMPUR-PEDIC Marks is likely to cause confusion, among the relevant public as to any affiliation, connection, association, or sponsorship of Defendants by Tempur Sealy, when in fact, Defendants have no connection or affiliation whatsoever with Tempur Sealy.

114.    Defendants' wrongful use of the TEMPUR-PEDIC Marks as alleged herein is likely to deceive the public into believing falsely that Defendants are affiliated, associated, connected, sponsored or otherwise approved by Tempur Sealy, when in fact Defendants have no connection or affiliation whatsoever with Tempur Sealy. Defendants, through passing off, false designations of origin, false descriptions and misrepresentation, have unfairly competed with Tempur Sealy, in violation of Florida common law.

115.    Defendants' conduct is likely to cause confusion among the relevant public as to whether any Defendants are Authorized Retailers, whether Defendants sell authorized TEMPUR-PEDIC brand products, and whether Defendants sell products that emanate with Tempur Sealy.

116.     Defendants' actions constitute trademark infringement and unfair competition in violation of the common law of the State of Florida.

117.     Defendants were or should have been, at all times, fully aware of Tempur Sealy's trademark rights. Tempur Sealy provided Defendants actual notice of its intellectual property rights multiple times since at least as early as 2011.  Defendants' continued and persistent use of the TEMPUR-PEDIC Marks in violation of Tempur Sealy's rights constitutes a material misrepresentation and is willful, malicious, and fraudulent. On information and belief, Defendants used and continue to use the TEMPUR-PEDIC Marks in bad faith with actual knowledge of: (1) the reputation and goodwill associated with the TEMPUR-PEDIC Marks; and (2) Tempur Sealy's ownership of the TEMPUR-PEDIC Marks.

118.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense. Defendants' actions were committed willfully, fraudulently, maliciously, or with gross negligence.

119.     As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business interests. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

120.     As a result of Defendants' conduct, Tempur Sealy is entitled to damages, including an accounting of any profits by Defendants, statutory damages, costs, interest, attorney's fees pursuant to Florida law, and any further relief, including without limitation, injunctive relief, which this Court may deem just and proper.

## COUNT SIX
### (Trademark Dilution under Florida Statute § 495.151)

121.    Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

122.    The TEMPUR-PEDIC Marks are arbitrary, fanciful, highly distinctive, widely recognized, and famous, as used in connection with premium mattresses, pillows, adjustable bases, and other comfort products and are strong and famous marks as a result of Tempur Sealy's prominence in the marketplace and extensive advertising of its goods and services under those marks, including in the state of Florida.

123.    As a direct result of Tempur Sealy's long and extensive experience, care, and skill in the manufacture and sale of premium mattresses and other comfort products under the TEMPUR-PEDIC Marks, Tempur Sealy has acquired a reputation for excellence, and enjoys an extensive demand for its products. In addition, Tempur Sealy has expended large sums in advertising, including in the state of Florida, to create substantial goodwill in the TEMPUR-PEDIC Marks and an image for products that are of a very high quality.

124.    Defendants, by wrongfully using the TEMPUR-PEDIC Marks long after those marks became famous, are likely to injure the business reputation of Tempur Sealy and its TEMPUR-PEDIC Marks and to dilute the distinctive quality of the TEMPUR-PEDIC Marks. Further, Defendants' false and/or misleading representations are likely to deceive customers as to the nature, quality, and characteristics of the products advertised and sold by Defendants. Such actions tarnish, dilute, and disparage Tempur Sealy's reputation, goodwill, and the TEMPUR-PEDIC Marks.

125.    Defendants' acts are likely to deprive Tempur Sealy of the benefit of the goodwill attached to the TEMPUR-PEDIC Marks, injure Tempur Sealy's business reputation, and dilute

the distinctive quality of the TEMPUR-PEDIC Marks in violation of Florida trademark dilution law.

126.    Defendants were or should have been, at all times, fully aware of Tempur Sealy's trademark rights.   Tempur Sealy provided Defendants with actual notice of its intellectual property rights. Defendants' continued and refused to stop use of the TEMPUR and TEMPUR-PEDIC Marks in violation of Tempur Sealy's rights is wanton and willful.

127.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer harm, while Defendants are unjustly enriched at Tempur Sealy's expense. Defendants' actions are and continue to be intention, willful and wanton.

128.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

## COUNT SEVEN
### (Anticybersquatting in Violation of Section 32 of the Lanham Act)

129.    Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

130.    The TEMPUR-PEDIC Marks, including the incontestable TEMPUR and TEMPUR-PEDIC Marks, are distinctive and famous and were distinctive and famous at the time Defendants registered and converted for their own use the domain name www.tempurpedicmattress.org.    Defendants also registered and own the domain www.tempurpedicrhapsodybed.com.

131.    Defendants' actions as described above, and specifically and without limitation, Defendants' bad faith registration and bad faith use of the domain name

www.tempurpedicmattress.org on the Internet and in their advertisements, were willful, and with bad faith intent, and done without the prior knowledge, permission or consent of Tempur Sealy.

132.    Defendants, in bad faith and for profit, have registered and used a domain name that is identical or confusingly similar to the TEMPUR-PEDIC Marks and have engaged in other acts designed to cause initial consumer confusion, evidencing a bad faith intent to profit from the registration and use of TEMPUR-PEDIC as part of a domain name, in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

133.    As a proximate result of the acts of Defendants, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense. Accordingly, pursuant to 15 U.S.C. § 1117(d), Tempur Sealy is entitled to its actual damages and/or statutory damages of up to $100,000.00 for each domain name that was wrongfully registered by Defendant.

134.    As a proximate result of the bad faith acts of Defendants, Tempur Sealy suffered and will continue to suffer damage to its goodwill, reputation, and business model. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm. Accordingly, pursuant to 15 U.S.C. § 1125(d)(1)(c), Tempur Sealy is entitled to an Order transferring from Defendants and to Tempur Sealy the www.tempurpedicmattress.org, www.tempurpedicrhapsodybed.com, and any other domain names containing the TEMPUR-PEDIC Marks, or anything confusingly similar, in the domain names.

### COUNT EIGHT
**(Copyright Infringement in Violation of 17 U.S.C. § 101, *et seq*.)**

135.    Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

136.    The Reclining Figure design is an original work of authorship and constitutes copyrightable subject matter under the laws of the United States, 17 U.S.C. § 102(a)(5), and in fact was duly and properly registered with the United States Copyright Office on April 21, 2010 as VA 1-729-142.

137.    Upon information and belief, Defendants knowingly and willfully caused to be produced copies of its Copyrighted Reclining Figure Design, without Tempur Sealy's permission and in violation of the Copyright Act, 17 U.S.C. § 501.

138.    By their actions alleged above, Defendants have infringed and will continue to infringe Tempur Sealy's rights arising under the Copyright Act in and relating to the Reclining Figure Design.

139.    Tempur Sealy is incurring irreparable harm, actual damages, and lost profits from Defendants' wrongful acts, and will continue to incur such irreparable harm and damages, and has no adequate remedy at law.  Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

140.    As a result of Defendants' conduct, Tempur Sealy is entitled to statutory damages, and/or actual losses and a disgorgement of Defendants' profits, costs, interest, attorney's fees pursuant to 17 U.S.C. § 504, and any further relief, including without limitation, injunctive relief, which this Court may deem just and proper.

## COUNT NINE
### (Violation of the Florida Deceptive and Unfair Trade Practices Act under Florida Statute §501.201 *et seq*.)

141.    Tempur Sealy incorporates and adopts by reference each and every allegation contained in paragraphs 1-81, as if set forth fully herein.

142.    The TEMPUR-PEDIC Marks and variants thereof, as used in connection with the premium mattresses, pillows, adjustable bases, and other comfort products are distinctive marks that have become exclusively associated with Tempur Sealy through its continuous, extensive, and widespread use of such marks in advertising, promoting, and marketing its products and services.  As a result, the TEMPUR-PEDIC Marks exclusively identify Tempur Sealy's business, products, and services.

143.    By reason of Defendants' wrongful use of the Tempur Sealy name and Marks and false or misleading descriptions of fact in connection with the sale of competing products, customers and prospective customer of Defendants' products are deceptively led to believe that products are affiliated, connected, associated, sponsored, or otherwise approved by Tempur Sealy, when in fact Defendants have no connection or affiliation whatsoever with Tempur Sealy in regard to such products.

144.    Defendants' unauthorized use in commerce of the TEMPUR-PEDIC Marks and false or misleading representations of fact concerning the products constitute deceptive acts and unfair practices, which is likely to cause confusion, including, but not limited to, initial confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of Defendants with Tempur-Pedic in violation of Florida Statute §501.204.

145.    Defendants were at all times fully aware of the high demand for TEMPUR-PEDIC brand products and Tempur Sealy's trademark rights.   Tempur Sealy provided Defendants with actual notice of its intellectual property rights at least as early as 2011. Defendants' continued violations and refusal to stop using the TEMPUR-PEDIC Marks after receiving such notice is wanton and willful. On information and belief, Defendants used and continue to use the TEMPUR-PEDIC Marks in bad faith with actual knowledge of: (1) the

reputation and goodwill associated with the TEMPUR-PEDIC Marks; and (2) Tempur-Pedic's ownership of the TEMPUR-PEDIC Marks.

146.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer lost profits, while Defendants are unjustly enriched at Tempur Sealy's expense.

147.    As a proximate result of the acts of Defendants as alleged herein, Tempur Sealy suffered and will continue to suffer actual damages. Tempur Sealy has no adequate remedy at law for this damage. Unless Defendants are preliminarily and permanently enjoined, Tempur Sealy will continue to suffer irreparable harm.

148.    As a result of Defendants' conduct, Tempur Sealy is entitled to damages, costs, interest, attorney's fees, and any further relief, including without limitation, injunctive relief, which this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Tempur Sealy requests a trial by jury of any issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Tempur Sealy seeks the following relief against Defendants, jointly and severally:

1.    That Defendants, their officers, agents, affiliates, servants, employees,  and attorneys, those persons in active concert or participation with Defendants who receive actual notice of the court's order by personal service or otherwise, any other aliases or company names under which Defendants conducted or attempt to conduct business, and all persons, companies, and entities acting on behalf of Defendants be preliminarily and permanently enjoined from, directly or indirectly, continuing their actions in violation of the Lanham Act, including:

     A.     using the TEMPUR-PEDIC Marks or any other trade name, trademark, trade dress, service mark, domain name, designation, symbol, or device containing the TEMPUR-PEDIC Marks, or any variant or any colorable imitations thereof;

     B.     using the TEMPUR-PEDIC Marks in keywords, metatags, or other source code for Defendants' various websites;

     C.     promoting, offering for sale, or selling competing products using the TEMPUR-PEDIC Marks through a retail store, via the internet, or through any other means or channels of trade now or hereafter developed;

     D.     making any false or misleading representation of fact concerning the source, nature, quality, or characteristics of their businesses, products or services, or warranty bearing, using, or advertised as sold by Defendants including but not limited to representing falsely that their products are identical to TEMPUR-PEDIC brand Products;

     E.     making any false or misleading representation of fact concerning the source, nature, quality, or characteristics of TEMPUR-PEDIC brand products;

     F.     doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition, or quality of products and/or services created, developed, produced, distributed, marketed, advertised, promoted, sold, or offered for sale by Defendants;

G.      doing any act or thing calculated or likely to deceive members of the public or trade, or prospective purchasers, into believing that there is some affiliation, sponsorship, or connection between Defendants and Tempur Sealy or that Defendants' products and/or services are being created, developed, manufactured, distributed, marketed, advertised, promoted, sponsored, offered for sale, or sold by Tempur Sealy or with Tempur Sealy's authorization, consent, approval, or permission;

H.      attempting to purchase TEMPUR-PEDIC brand Products or engaging in business with Tempur Sealy, or any Tempur Sealy subsidiary, authorized retailer, or affiliated company, in their own names, in the name of any other company, alternate account, or alias, or through an agent or representative acting on their behalf;

2.      that this Court require Defendants to immediately take all steps necessary to transfer and assign to Tempur Sealy any and all domain name registrations registered by or on behalf of Defendants that includes the term TEMPUR-PEDIC or any terms identical or confusingly similar to the TEMPUR-PEDIC Marks;

3.      that Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Tempur Sealy within thirty days after entry of the injunction a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction; that the Court enter judgment against Defendants on Tempur Sealy's claim for copyright infringement in violation of 17 U.S.C. § 101, et seq.;

4.      that Tempur Sealy recover its actual damages sustained as a result of Defendants' wrongful actions;

5.      that Defendants be required to account for and pay over to Tempur Sealy all gains, profits, and advantages realized as a result of Defendants' wrongful actions;

6.      that Tempur Sealy recover three times Defendants' profits made as a result of Defendants' wrongful actions, or three times Tempur Sealy's damages, whichever is greater;

7.      that as a result of Defendants' ongoing willful and egregious conduct this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and that Defendants be deemed jointly and severally liable for and be ordered to reimburse Tempur Sealy for its reasonable attorneys' fees;

8.      that Tempur Sealy be awarded the maximum statutory damages pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1117(d);

9.      that Tempur Sealy be awarded exemplary and punitive damages, including attorney's fees, under Florida law for Defendants' willful, malicious, and tortious acts;

10.      that Tempur Sealy be awarded actual damages suffered by it as a result of the infringement, and any profits of the infringers that are attributable to the infringement under the Copyright Act, 17 U.S.C. § 504;

11.      that Tempur Sealy be awarded statutory damages pursuant to the Copyright Act, 17 U.S.C. § 504;

12.      that Tempur Sealy be awarded its actual damages pursuant to the Florida Deceptive and Unfair Trade Practices Act under Florida Statute §501.201 et seq.

13.      that Tempur Sealy be awarded prejudgment interest at the rate established by Florida statutes from the date the agreement was breached through the date of entry of judgment;

14.      that Tempur Sealy recover its costs of court; and

15.      that Tempur Sealy recover such further relief to which it may be entitled.

Dated:  June 10, 2016                    Respectfully submitted,

s/Suzanne Barto Hill
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
E-Mail:  dgerber@rumberger.com
SUZANNE BARTO HILL, ESQUIRE
Florida Bar No. 0846694
E-Mail:  shill@rumberger.com
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133


AMY SULLIVAN CAHILL
*PRO HAC VICE ADMISSION PENDING*
Kentucky Bar No. 085554
Email: acahill@cahill-ip.com
MICHELLE BROWNING COUGHLIN
*PRO HAC VICE ADMISSION PENDING*
Kentucky Bar No. 93081
Email: mcoughlin@cahill-ip.com
CAHILL IP, PLLC
333 East Main Street, Suite 403
Louisville, Kentucky 40202
Telephone: (502) 657-7830
***Attorneys for Plaintiffs***